# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| NORTHROP GRUMMAN INNOVATION SYSTEMS, INC., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ZURICH AMERICAN INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYDS OF LONDON, CONTINETAL CASUALTY INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, U.S. SPECIALTY INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, ALLIED WORLD ASSURANCE COMPANY, STARR INDEMNITY & LIABILITY COMPANY, XL SPECIALTY INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, QBE INSURANCE CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. N18C-09-210 PRW CCLD |
| Defendants. | ) | |

Submitted: February 23, 2021
Decided: March 1, 2021

*Upon Defendant Alliant Insurers' Application for*
*Certification of an Interlocutory Appeal*
**DENIED**

# ORDER

This 1st day of March, 2021, upon consideration of Defendants National Union Fire Insurance Company of Pittsburgh, Pa., U.S. Specialty Insurance Company, Twin City Fire Insurance Company, Allied World National Assurance Company, Travelers Causality and Surety Company of America, and Starr Indemnity and Liability Company's (collectively, the "Alliant Insurers") application under Rule 42 of the Supreme Court for an order certifying an appeal from an interlocutory order of this Court, dated February 2, 2021, it appears to the Court that:

(1)     This is an insurance coverage dispute in which Northrop[1] contends its insurers wrongfully denied it coverage for settlement and defense expenses it incurred in the *Knurr* Litigation.  On February 2, 2021, the Court issued a memorandum opinion and order (the "Order")[2] addressing seven then-pending dueling and cross-dispositive motions that revolved primarily around the question of whether coverage for the 14(a) and 10(b) Claims brought in the *Knurr* Litigation was available under any or all of three Policies.

(2)     Relevant here, the Order granted Northrop's summary judgment motion, and denied the Alliant Insurers' summary judgment motions in part, holding

---

[1]   Unless otherwise noted, each capitalized term herein has the meaning given it in the Court's February 2, 2021 memorandum opinion and order.

[2]   D.I. 727; *see generally Northrop Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*, 2021 WL 347015 (Del. Super. Ct. Feb. 2, 2021).  Citations to the Order track the web-published version.

that coverage for the 14(a) Claim lied with the Alliant Policies. In doing so, the Order declined to resolve issues concerning the Alliant Insurers' liability for certain defense costs, allocation of damages among those Insurers and the Orbital Sciences and OATK Insurers, and attachment of excess layers in the Alliant Policies. These issues, along with many others not pertinent to the Alliant Insurers but left open in the active litigation between Northrop and the Orbital Sciences and OATK Insurers, have been submitted for trial.

(3) The Alliant Insurers request the Court's certification of the entire Order as it relates to them. The Court, though, may certify an application in part only where appropriate.[3] And the Court must clarify what is certifiable, especially where, as here, the ask in the application is imprecise.[4] Based on the Alliant Insurers' substantive arguments on the Rule 42(b)(iii) factors, the sole question properly distilled (or clearly articulated) for appeal is whether the Order correctly construed the Bump Up Exclusion in finding that the Exclusion did not bar coverage for the

---

[3] *See In re Port of Wilmington Gantry Crane Litig.*, 2020 WL 5757344, at *2 & n.16 (Del. Super. Ct. Sept. 28, 2020), *appeal refused*, 241 A.3d 221 (Del. 2020).

[4] *Gantry Crane*, 2020 WL 5757344, at *2 n.16 ("It is important that this Court distill and clarify the issue or issues posed in a certification request, because a trial court may certify an order for appeal in whole or in part, and the Supreme Court may review it the same way."); *see, e.g.*, *Dow Chem. Corp. v. Blanco,* 67 A.3d 392, 394 (Del. 2013) ("The Defendants applied for an interlocutory appeal of the Superior Court's opinion under Supreme Court Rule 42. The Superior Court granted the application for an interlocutory appeal presenting one narrow question . . . [t]he Superior Court denied certification of the Defendants' remaining questions for interlocutory appeal. . . . Our inquiry is limited to the question certified.").

14(a) Claim.[5] Specifically: whether, contrary to the Order's reading, a federal proxy fraud lawsuit really is a "Claim" that "alleges" "inadequate consideration" given for the "acquisition of all or substantial all the ownership interests or assets of an entity," the settlement of which "represent[s]" an "effective increase" of that consideration.

(4) Supreme Court Rule 42 governs interlocutory appeals from this Court's orders.[6] Certification is not an appropriate vehicle for re-litigating unsuccessful arguments preserved for, and naturally amenable to, direct appeal. The Rule thus cautions this Court not to certify interlocutory review often.[7] And so the Court will assess the Alliant Insurers' application under Rule 42's "rigorous" standards.[8]

(5) Under Rule 42, the Court must: (a) determine whether the Order "decide[d] a substantial issue of material importance that merits appellate review

---

[5] The Alliant Insurers suggest the Order's finding that they failed to meet their summary judgment burdens to show some fees were not "jointly incurred" Defense Costs as a matter of law should be certified. But, abiding by summary judgment's genuine issue standard, the Order did not decide any Defense Costs liability. It simply found these fees presented fact questions based on the same definition of "incurred" the Alliant Insurers adopted in their briefs. *See* National Union's Reply Brief at 16 (citing *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665, 684 (Del. 2013)) (D.I. 680). As a result, this issue wasn't decided on the merits and therefore does not advance past Rule 42(b)(i)'s prefatory query. *See Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008) (observing that an issue is not substantial if not decided on the merits); *infra* nn.14-17 & accompanying text.

[6] *Gantry Crane*, 2020 WL 5757344, at *1 (citing *DiSabatino Bros., Inc. v. Wortman*, 453 A.2d 102, 103 (Del. 1982)).

[7] Del. Supr. Ct. R. 42(b)(ii).

[8] *Gantry Crane*, 2020 WL 5757344, at *1 (citing *TowerHill Wealth Mgmt., LLC v. Bander Fam. P'ship, L.P.*, 2008 WL 4615865, at *2 (Del. Ch. Oct. 9, 2008)).

before a final judgment;"[9] (b) engage up to eight factors listed in Rule 42(b)(iii);[10] (c) mind the most efficient and prudent schedule for resolving the case; and (d) identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review best serves the interests of justice.[11] "If the balance is uncertain," the Court is instructed to refuse certification.[12] That is because "[a]pplications for . . . interlocutory appeal . . . are

---

[9] Del. Supr. Ct. R. 42(b)(i).

[10] (A) The interlocutory order involves a question of law resolved for the first time in this State;

(B) The decisions of the trial courts are conflicting upon the question of law;

(C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order;

(D) The interlocutory order has sustained the controverted jurisdiction of the trial court;

(E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice;

(F) The interlocutory order has vacated or opened a judgment of the trial court;

(G) Review of the interlocutory order may terminate the litigation; or

(H) Review of the interlocutory order may serve considerations of justice.

Del. Supr. Ct. R. 42(b)(iii).

[11] Del. Supr. Ct. R. 42(b). Those "probable costs" are informed, in part, by Rule 42(b)(ii), *i.e.*, that interlocutory appeals "disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources." Del. Supr. Ct. R. 42(b)(ii).

[12] Del. Supr. Ct. R. 42(b).

granted only in extraordinary or exceptional circumstances."[13]

(6) Whether an order decided a substantial issue of material importance is a gatekeeping inquiry. Indeed, absent a substantial issue of material importance, a Rule 42 applicant never gets out of the blocks.[14] An issue is substantial when it goes to "a main question of law [that] relates to the merits of the case, and not to collateral matters."[15] Too, the interlocutory order must establish a legal right to be appealable.[16] A legal right is discernable when "one of the parties' rights has been enhanced or diminished as a result of the order."[17]

(7) The Court agrees with the Alliant Insurers that deciding their Policies cover the 14(a) Claim implicates a central, merits-based issue. Though merely one bit of a stage in which twelve parties raised multifarious challenges across seven

---

[13] *Gantry Crane,* 2020 WL 5757344, at *1 (citations omitted).

[14] *See, e.g.*, *Traditions, L.P. v. Harmon*, 2020 WL 1646784, at *1 (Del. Apr. 2, 2020).

[15] *Sprint*, 2008 WL 2861717, at *1.

[16] *Pepsico, Inc. v. Pepsi-Cola Bottling Co. of Asbury Park*, 261 A.2d 520, 521 (Del. 1969) ("[A]s to the appealability of interlocutory orders . . . to be appealable, there must have been the determination of a substantial issue and the establishment of a legal right." (citation omitted)); *accord Castaldo v. Pittsburgh-Des Moines Steel Co., Inc.*, 301 A.2d 87, 87 (Del. 1973) ("The oft-repeated test of the appealability of an interlocutory order is that it must determine a substantial issue and establish a legal right.").

[17] *In re Cogent, Inc. S'holder Litig.*, 2010 WL 4146179, at *1 (Del. Ch. Oct. 15, 2010) (internal quotation marks omitted).

fully-briefed and opposed motions, the Order does afford Northrop a legal right to coverage, and consequently, imposes on the Alliant Insurers a legal duty to pay.

(8) But that's not enough to warrant interlocutory appeal. The substantial issue of material importance resolved must—in the case-specific environment in which it arose—necessitate "appellate review *before a final judgment*."[18] Contract interpretation, no matter the stakes, generally is not the kind of undertaking worthy of midstream intervention by our high court.[19] And where, as here, a party's application, when reduced, simply transmits an objection to the interpretive outcome at which a court arrives, direct appeal is the abler device.[20] Insurance policies are contracts, regardless of their textual complexity and the breadth of coverage sought or obtained thereunder. Comparatively, then, the Alliant Insurers' request starts at

---

[18] Del. Supr. Ct. R. 42(b)(i) (emphasis added).

[19] *See, e.g.*, *Thomas v. Headlands Tech Principal Holdings, L.P.*, 2020 WL 6112302, at *2 (Del. Super. Ct. Oct. 16, 2020) ("As a general matter, issues of contract interpretation are not worthy of interlocutory appeal." (citing *REJV5 A WH Orlando, LLC v. A WH Orlando Member, LLC*, 2018 WL 1109650, at *3 (Del. Ch. Feb. 28, 2018) (internal quotation marks and brackets omitted)), *appeal refused*, 2018 WL 1466880 (Del. Mar. 26, 2018)), *appeal refused*, 2020 WL 6538824 (Del. Nov. 6, 2020); *Rite Aid Corp. v. Ace Am. Ins. Co.*, 2020 WL 6058294, at *2 (Del. Super. Ct. Oct. 13, 2020) (same); *Steadfast Ins. Co. v. DBi Servs., LLC*, 2019 WL 3337127, at *1 (Del. Super. Ct. July 25, 2019) (same), *appeal refused*, 2019 WL 3453239 (Del. July 31, 2019); *accord Lexington Ins. Co. v. Almah LLC*, 2016 WL 3621125 (Del. June 28, 2016) (refusing interlocutory appeal of decision on cross-motions for summary judgment that turned on policy interpretation); *Robino-Bay Ct. Plaza, LLC v. W. Willow-Bay Ct., LLC*, 2007 WL 4463593 (Del. Dec. 21, 2007).

[20] *See Rite Aid*, 2020 WL 6058294, at *2 (denying certification where application "in form and in essence" was based on disagreement with the Court's interpretation and application of insurance law to the subject policies); *accord Legion Partners Asset Mgmt., LLC v. Underwriters at Lloyds London*, 2020 WL 6875211, at *3 (Del. Super. Ct. Nov. 23, 2020), *appeal refused*, 2020 WL 7055842 (Del. Dec. 2, 2020).

a disadvantage and should be deemed of lesser immediate import. Nevertheless, the Court will assume that the Alliant Insurers' application crosses Rule 42(b)(i)'s threshold and examine Rule 42(b)(iii)(A), (G) and (H)—the factors they insist support exceptional and extraordinary action here.

(9)     Under Rule 42(b)(iii)(A)—the "issue of first impression" factor—the Alliant Insurers charge the Order with rendering two novel judgments:  (i) holding, for the first time in Delaware, that the Bump Up Exclusion does not exclude claims like the 14(a) Claim; and (ii) concluding, for the first time in Delaware, that a merger and an acquisition of substantially all an entity's ownership are independent transactions.  These assertions both misunderstand what qualifies as an issue of first impression and mischaracterize the Order's scope and reasoning.

(10)   As to the Bump Up Exclusion: the mere tackling of an unencountered insurance policy exclusion does not make a court's interpretation thereof a novel decisional enterprise.[21]  When a court uses well-settled interpretive tools derived from equally well-settled law, application of those rules and principles to a "new"

---

[21]   *See Rite Aid*, 2020 WL 6058294, at *2 ("While the Court agrees that there are no . . . Delaware reported decisions interpreting the specific policy language at issue . . . this does not create a 'substantial issue of material importance' out of mere contract dispute." (citation omitted)); *accord McKnight v. USAA Cas. Ins. Co.*, 2005 WL 1175941, at *1 (Del. May 16, 2005) (affirming denial of certification even though "the particular exclusion at issue ha[d] not previously been interpreted in Delaware" because the court "applied well-established principles of contract interpretation").

contractual term does not wade that court into waters previously-uncharted.[22] Indeed, the Order read the Exclusion's plain language by invoking established insurance law and contract analysis utilized in all coverage disputes. Accordingly, it is of no moment for certification purposes that the Court happened to be the first in this state to construe the Exclusion.

(11) On the transactional distinction: there are several problems with the Alliant Insurers' contentions. As an initial matter, the Alliant Insurers never claimed the difference between a merger and a substantially-all-interest acquisition was unsettled or even significant.[23] Indeed, at argument, the Alliant Insurers emphasized that the Exclusion applied no matter how the transaction was structured or

---

[22] *See McKnight*, 2005 WL 1175941, at *1 (Supreme Court refused interlocutory appeal where this Court had refused certification finding an application of well-settled contract principles "does not involve a matter of first impression"); *Rite Aid*, 2020 WL 6058294, at *3 ("Just because there are no Delaware . . . cases addressing this specific factual situation does not mean that [the order] involves questions of law resolved for the first time in Delaware"); *see also Legion*, 2020 WL 6875211, at *3 ("[T]he coverage question involved application of unambiguous policy language to the pleadings in the underlying litigation," which does not imply an issue of first impression.); *Realogy Holdings Corp. v. SIRVA Worldwide*, 2020 WL 4559519, at *11 (Del. Ch. Aug. 7, 2020) (denying certification because "straightforward interpretations of contractual terms" do not involve "a question of law resolved for the first time in Delaware"); *Alcoa World Alumina LLC v. Glencore Ltd.*, 2016 WL 3659424, at *2 (Del. Super. Ct. Mar. 10, 2016) (denying certification "[e]ven though the Court could not find another Delaware decision with the same fact pattern" because "the Court applied already accepted rules of law to the facts"), *aff'd sub nom.*, *Glencore Ltd. v. St. Croix Alumina, LLC*, 2016 WL 6575167 (Del. Nov. 4, 2016).

[23] *Legion*, 2020 WL 6875211, at *3 (rejecting argument under Rule 42(b)(iii)(A) where "[n]one of the parties argued in their summary judgment briefing that the case involved issues of first impression, and [the] Court did not so find").

-9-

denominated.[24]  That aside, the transactions are not the same.  As the Court explained—Delaware statutory and common law distinguish the two, and so did the underlying proxy solicitation documents.[25]  Additionally, the Order was not trading in corporate law.  The Alliant Insurers drafted the unambiguous terms "acquisition" and "substantially all the ownership interests" without defining them.  So, the Court—dealing with contract law—looked to ordinary meaning to supplement technical meaning.  Both confirmed a "merger" is different in form and substance. Most important, the distinction was not crucial.  To be sure, the Order offered four alternative, dispositive reasons why the Exclusion didn't apply.[26]  And, for the sake of completeness, the Order credited the Alliant Insurers' theory that the transaction was an acquisition, only to find other elements unsatisfied.[27]

(12)   Even with all this, the Alliant Insurers seize on the Order's references to appraisal remedies and append to their application an order accepting consolidated certification of *Solera Holdings, Inc. v. XL Specialty Ins. Co*.[28]  But *Solera* doesn't

---

[24]   Or. Arg. Tr., Jan 7, 2021, at 114 ("[Alliant Insurers' counsel:] The bump up provision applies regardless of whether we label the transaction as a merger or an acquisition.") (D.I. 722).

[25]   *See Northrop*, 2021 WL 347015, at *21 & nn.210-12, 214.

[26]   *See id.* at *20-22.

[27]   *See id.* at *21 ("Still, even with the [Alliant] Insurers' insertion [of a transactional maneuver which would have made the transaction an acquisition under the Exclusion], the Exclusion wouldn't apply.").

[28]   2019 WL 4733431 (Del. Super. Ct. Sept. 26, 2019) (granting certification), *rev'd sub nom.*, *In re Solera Ins. Coverage Appeals*, 240 A.3d 1121 (Del. 2020).

help. *Solera* involved a coverage provision and the question of whether an appraisal action counted as a "Securities Claim." Here, the Order construed an exclusion—not a securities claim coverage definition—and discussed appraisal remedies in the limited context of distinguishing a California decision about appraisals; a decision on which the Alliant Insurers relied.[29] So, despite any rhetorical results the Alliant Insurers seek to achieve by analogizing the Order to *Solera*, the Court didn't rule here on appraisals or determine that the Bump Up Exclusion only captured appraisal lawsuits.

(13) At bottom, the Order did not "decide" any corporate law issue, let alone an unprecedented one ripe for immediate appeal.[30] That the Alliant Insurers disagree with the Order or think it contradicted Delaware law is not ground on which to rest a certification of immediate appeal.[31] Accordingly, Rule 42(b)(iii)(A) does not support their application.

---

[29] *See Northrop*, 2021 WL 347015, at *20, *22.

[30] *See Legion*, 2020 WL 6875211, at *3 (rejecting insurer's claim that the subject order disregarded relevant corporate law and observing "[t]he 'issues of first impression' that [the insurer] describes in its [a]pplication are only [its] mischaracterization of the Court's holdings").

[31] *See id.* (Disagreement with the Court's interpretation of policy language and use of an insurance framework "does not meet the standard for interlocutory review. Otherwise, interlocutory review would be appropriate in every case in which the Court committed legal error." (citation omitted)); *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, 2015 WL 1830476, at *2 & n.3 (Del. Ch. Apr. 20, 2015) (limiting certification to claims that were not based on contract interpretation because "The Court's contract interpretation, even if wrong, would not seem to warrant interlocutory appeal."), *appeal refused*, 2015 WL 2019387 (Del. Apr. 30, 2015).

(14) Under Rule 42(b)(iii)(G)—the "litigation termination" factor—the Alliant Insurers stress that, if the Exclusion were interpreted in their favor, they would be dismissed from the case and spared of further expense. This factor, though, is about the litigation as a whole—not one group of parties.[32] Even if the Supreme Court reversed the Order, the litigation still would proceed with half the litigants: Northrop, the Orbital Sciences Insurers, and the OATK Insurers. Indeed, most of the issues surrounding the 14(a) Claim's coverage now involve the Orbital Sciences Insurers, against whom Northrop did not move at all. In contrast, the issues remaining for the Alliant Insurers are minimal. Freezing this lawsuit completely so the Alliant Insurers can pursue a unidimensional contract-interpretation appeal is neither administratively sound nor remotely fair to the other six, equally-invested parties.[33] Accordingly, Rule 42(b)(iii)(G) does not support the Alliant Insurers' application.

---

[32] *See Energy Transfer Equity, L.P. v. Twin City Fire Ins. Co.*, 2020 WL 6112299, at *4 (Del. Super. Ct. Oct. 16, 2020) (rejecting argument under Rule 42(b)(iii)(G) because successful appeal would not "terminate the litigation in its *entirety*" and "other defendants remain[ed] in the" case (emphasis in original)), *appeal refused*, 2020 WL 7861340 (Del. Dec. 31, 2020); *see also Rite Aid*, 2020 WL 6058294, at *4 (rejecting argument under Rule 42(b)(iii)(G) even though an insurer would have been dismissed from the case because none of the other factors supported certification).

[33] *Cf.* Del. Supr. Ct. R. 42(b)(iii) (directing this Court to consider factors through lens of "its own assessment of the most efficient and just schedule to resolve the case" so as to preserve "the interests of justice"); *see Gantry Crane*, 2020 WL 5757344, at *4 ("[T]he potential further delays and increased costs to all parties in this . . . action outweigh the potential limited benefit to" the applicant.).

-12-

(15) Last, under Rule 42(b)(iii)(H)—the "considerations of justice" factor—the Alliant Insurers rehash their dismissal arguments, blame COVID-19, and incant the amount in controversy. But these "considerations" cut both ways. This case has been litigated vigorously for over two years. It has generated thousands of documents; introduced dozens of witnesses; spawned motions to compel, to continue, to dismiss, for judgment on the pleadings, and for summary judgment; instigated several discovery conflicts; drawn up seven (usually-contested) case-management proposals; and required a lengthy hearing to corral the parties' divergent and inconsistent positions into one (hopefully) logical Order. And it is now nearing final trial-readiness. Northrop, the Orbital Sciences Insurers, the OATK Insurers, and their constituents, have as much to complain about cost-, time-, and pandemic-conditions-wise as the Alliant Insurers and their constituents do.

(16) Interlocutory review would compound these burdens further. Indeed, a halt for appeal here would just cause "disruption of the normal process of litigation, delay, and exhaustion of scarce party and judicial resources (especially in the midst of the ongoing pandemic)."[34] Put differently, the Alliant Insurers' application would produce piecemeal litigation over intricate issues seemingly-refined by the Order

---

[34] *Ferrellgas Partners, L.P. v. Zurich Am. Ins. Co.*, 2020 WL 5579335, at *2 (Del. Super. Ct. Sept. 17, 2020) (citing Del. Supr. Ct. R. 42(b)), *appeal refused sub nom.*, *Beazley Ins. Co., Inc. v. Ferrellgas Partners L.P.*, 2020 WL 5998163 (Del. Oct. 9, 2020).

and further tax, not promote, judicial economy.[35] That being so, "[t]he most efficient way to resolve this [two-plus]-year-old case is to . . . prepare for and conduct trial, as opposed to potentially stalling the litigation [and] diverting resources away from it" by certifying "a narrow issue involving only" the Alliant Insurers.[36] That sizeable damages loom doesn't vary this far more just course.[37] Accordingly, Rule 42(b)(iii)(H) does not support these insurers' application.

(17) After examining the Rule 42(b)(iii) factors, the Court must advance the benefits outweighing the hardship interlocutory review might occasion.[38] Taking all the factors together, coupled with the Court's own discretionary assessment of what is best for the orderly distribution of justice in this case,[39] there are no measurable

---

[35] *See REJV5*, 2018 WL 1109650, at *2 ("The litigation is active and ongoing and the parties show no signs of easing off the gas pedal. What [the applicant] now proposes is a piecemeal approach to the litigation that will not advance the interests of justice but will increase costs and burdens." (citation omitted)); *Krahmer v. Christie's Inc.*, 2006 WL 4782303, at *1 (Del. Ch. June 15, 2006) ("Certification would likely result in the piecemeal appeal of factually and legally related issues and would be contrary to the interest of justice and the orderly procession of matters before this court.").

[36] *Gantry Crane*, 2020 WL 5757344, at *4; *see Legion*, 2020 WL 6875211, at *4 ("[A]ny incremental benefit afforded [the applicant] by immediate review would not outweigh the imposition on the parties and the justice system.").

[37] *Rite Aid*, 2020 WL 6058294, at *2-3 ("The Court must use the same approach for each request for certification and not elevate one over the other because of the amount in controversy. . . ." The amount in controversy does not "satisf[y] the considerations of justice standard" because the Court "considers each issue before it despite the dollar amount owed." (internal quotation marks omitted)).

[38] Del. Supr. Ct. R. 42(b)(iii).

[39] *Id.* R. 42(b)(ii)-(iii).

pros to certification. In the totality of these circumstances, an interpretation of one insurance policy exclusion that one cohort of many insurers dislikes plainly does not warrant the extraordinary treatment contemplated by Rule 42's demanding strictures.[40] If the Order truly is wrong, then it will be rectified on direct appeal from a final judgment.[41] But pause for immediate appeal now would merely elevate the routine to the rare.[42]

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Alliant Insurers' Application for Certification of Interlocutory Appeal is **DENIED.**

Paul R. Wallace, Judge

Original to Prothonotary
cc: All counsel via File & Serve

---

[40] *See Gantry Crane*, 2020 WL 5757344, at *4 ("[I]mmediate review of [an] isolated facet" in a case that is unexceptional fails to meet Rule 42's "strict standard for certification." (citing *DBi Servs.*, 2019 WL 3337127, at *1) (internal quotation marks omitted)).

[41] *See Walton v. Cole*, 2020 WL 5743282, at *2 (Del. Sept. 25, 2020) (refusing certification and observing that "if the Superior Court erred in its application of the law to the facts of this case, then that error can be remedied on appeal from a final judgment"); *Ferrellgas*, 2020 WL 5579335, at *4 (observing that the insurer's failure to obtain interlocutory review "will not bar it from seeking review . . . on appeal from [a] final order, judgment or decree" (citing Del. Supr. Ct. R. 42(f))).

[42] *But see* Del. Supr. Ct. R. 42(b)(ii) ("Interlocutory appeals should be exceptional, not routine[.]").

-15-